Sarah Bannister, Brandon Hood, and LaBarron Tate ("Petitioning Creditors" or "Petitioners") by and through undersigned counsel ("Creditors' Counsel), hereby submit their opening brief appealing three orders of the Bankruptcy Court in favor of Navient Solutions LLC ("Navient" or "Putative Debtor).

## I.   QUESTIONS PRESENTED

1   Did the Bankruptcy Court err when it refused to convert the Putative Debtor's motion to dismiss into one for summary judgment but then dismissed the petition because "Petitioning Creditors . . . provided *no* evidence of their claims"?

2   Did the Bankruptcy Court err when it allowed the Putative Debtor to recharacterize itself as Navient Corporation rather than Navient Solutions LLC?

3   Did the Bankruptcy Court err when it ordered that attorneys' fees be paid by undersigned counsel despite undersigned attorney clearly not being a "petitioner" under the statute?

## II.   JURISDICTIONAL BASIS

Petitioners hereby appeal from the Bankruptcy Court's decisions: (i) dismissing the involuntary petition; (ii) finding that Petitioners' Counsel acted in bad faith; and (iii) awarding attorneys' fees to the Putative Debtor.  A district court "has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  On such an appeal, a district court reviews the bankruptcy court's findings of fact for clear error, and any conclusions of law *de novo." In re Murray*, 565 B.R. 527 (S.D.N.Y. 2017).

## III.   STATEMENT OF CASE

The Petitioning Creditors each borrowed private student loans from the Putative Debtor.  The Petitioning Creditors each obtained bankruptcy discharges.  The Petitioners' private student loans

were discharged because they did not fit within the scope of the statutory exception from discharge for some student loans.  Nonetheless, after receipt of discharge and owing to Navient's continued collection efforts, the Petitioning Creditors each repaid substantial sums of money to Putative Debtor.  In an attempt to recover these monies, Petitioning Creditors were formerly putative class members of a nationwide class action that was dismantled by the Fifth Circuit.  Although the Fifth Circuit dismantled the class, it sided with Petitioners on the merits.  The Fifth Circuit was later joined by the Tenth Circuit and now the Second Circuit in declaring that private student loans for non-title IV institutions were dischargeable in bankruptcy. *See, e.g., Homaidan v. Sallie Mae, Inc. et. al.* 3 F.4th 595 (2nd Cir. 2021).[1]  Despite these precedents, Navient has made it clear that unless and until each discharged debtor with a private student loan for a non-Title IV school prevails in his or her own civil action or adversary proceeding, Navient will not stop collecting and not refund any money it has collected.  Petitioners believed this was not a reasonable legal position but instead a ruse to avoid complying with the consequence of those circuit decisions.

Petitioning Creditors therefore reasoned that if Navient refused to litigate in good faith, the only way to prevent them from continuing to violate their discharge orders — and the discharge orders of hundreds of thousands of other similar situated debtors — was to force Navient into its own bankruptcy. Petitioners believed this would serve two purposes.  *First*, rather than having each individual debtor file a civil action to obtain an individual determination that their <u>*debts*</u> were discharged, if Navient were itself forced into bankruptcy, the bankruptcy court would be obliged to analyze the tens of thousands of discharged Career Training loans as <u>*assets*</u> of Navient's bankruptcy estate.  Such an analysis would ultimately conclude that these assets had been discharged and valueless. *In re Alpha Protective Servs., Inc.*, 593 B.R. 364, 373 (Bankr. M.D. Ga.

---

[1] All three of these appellate decisions were litigated against Navient.

2018) ("The Bankruptcy Code [] requires courts to consider the 'fair value' of the debtor's assets. In performing a fair value analysis, a court does not have to accept the values listed on financial statements and may consider any contingencies that impact an asset's fair value."). *Second*, since any money taken in violation of the discharge were *void* transactions under 11 U.S.C. § 524 —not voidable— the Petitioning Creditors and all other debtors would be entitled to full restitution before the secured creditors.[2]  Petitioning Creditors' Counsel still believes this was a sound legal strategy.  But even if it was not, it was not done in bad faith.

## IV.   PROCEDURAL BACKGROUND

Petitioning Creditors initiated this action on February 8, 2021. JA at 1. On February 17, 2021, the Putative Debtor moved to dismiss and shorten the time for response. JA at 114-149.  On February 18, 2021, Petitioning Creditors sought to transform the motion into summary judgment, JA at 579, which the Bankruptcy Court denied on February 19, 2021.  JA at 602.  On February 25, 2021, this Court dismissed the action from the bench JA at 657-58.  On March 8, 2021, the Bankruptcy Court published a thirty-page opinion dismissing the case, abstaining from the case, and finding that Petitioning Creditors' Counsel acted in bad faith. JA at 729-59.  On March 11, 2021, Petitioning Creditors moved for reconsideration. JA at 761- 770.  On March 12, 2021, one day later, the Bankruptcy Court denied the motion for reconsideration. JA at 773-74.  On March 26, 2021, Petitioning Creditors timely appealed the final order dismissing and abstaining from the petition to the United States District Court for the Southern District of New York.  JA at 776- 78 On April 7, 2021, the case was assigned to the Honorable John G. Koeltl.  On May 11, 2021, the

---

[2] The Petitioning Creditors felt this was warranted because if at some point Navient declared voluntary bankruptcy, the debtors would most likely not even be noticed and never be unable to obtain any restitution in the madness that followed. Worse, Navient or a trustee might very well try to sell these discharged debts to third parties. This was the point of the analogy to the TERI bankruptcy, which one of the Petitioning Creditors was materially injured by despite never having received notice or any opportunity to be heard. JA at 21.

Bankruptcy Court entered its order awarding Navient its attorneys' fees JA at 1093-1113.  On May 18, 2021, Petitioning Creditors timely appealed the order awarding attorneys' fees.  JA at 1114.

## V.  LEGAL STANDARDS

### A.  The Elements of An Involuntary Petition

"Involuntary bankruptcy petitions help ensure the orderly and fair distribution of an estate by giving creditors an alternative to watching nervously as assets are depleted, either by the debtor or by rival creditors who beat them to the courthouse." *In re Murray*, 900 F.3d 53 (2d Cir. 2018). For that reason, and "[a]s a threshold matter, there is a presumption that an Involuntary Petition was filed in good faith." *In re Speer*, 522 B.R. 1, 10 (Bankr. D. Conn. 2014).  An involuntary bankruptcy petition may be filed by three or more creditors holding claims aggregating $15,353 which are not contingent or subject to a bona fide dispute.  "There is a bona fide dispute if there is either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts." *In Re Manolo Blahnik Usa, Ltd.*, 619 B.R. 81 (Bankr. S.D.N.Y. 2020). In addition, at trial, the Petitioning Creditors must demonstrate are not generally paying its debts as they become due. "Courts have stated that the determination whether a debtor is generally paying its debts calls for the consideration of four factors: (1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct of its financial affairs." *In re A & J Quality Diamonds, Inc.*, 377 B.R. 460 (Bankr. S.D.N.Y. 2007).

### B.  Motion to Dismiss under 12(b)(6)

"Under Rule 8(a)(2), the pleading requirement is satisfied by 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2). Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests.'" *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007). "Dismissal of a complaint pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted is not warranted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (internal quotation marks omitted). "The inquiry focuses not on whether a plaintiff might ultimately prevail, but on whether he is entitled to offer evidence in support of the allegations in the complaint.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test. Dismissal is warranted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Glucksman v. First Franklin Finan. Corp.* 601 F. Supp. 2d 511, 514 (E.D.N.Y. 2009).  Our task in reviewing a 12(b)(6) ruling "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (internal quotation marks omitted)." *See also Sims v. Artuz*, 230 F.3d 14 (2d Cir. 2000).

### C.  Conversion to Summary Judgment Requirement

"The Court cannot consider evidence on a motion to dismiss unless it converts the motion to one for summary judgment under Rule 56." *Ibrahim v. Mortgageit, Inc.*, No. C 11-0802 SBA (N.D. Cal. June 28, 2011).  "This conversion requirement is strictly enforced whenever there is a 'legitimate possibility' that the district court relied on material outside the complaint in ruling on

the motion." *Amaker v. Weiner,* 179 F.3d 48, 50 (2d Cir.1999). "Thus, a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants, *Kopec v. Coughlin* 922 F.2d 152, 155 (2d Cir. 1991), or relies on factual allegations contained in legal briefs or memoranda, *Fonte,* 848 F.2d at 25, in ruling on a 12(b)(6) motion to dismiss. Vacatur is required even where the court's ruling simply "mak[es] a connection not established by the complaint alone" or contains an "unexplained reference" that "raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion." *Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000). A district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants, or relies on factual allegations contained in legal briefs or memoranda." *Kopec v. Coughlin* 922 F.2d 152, 155 (2d Cir. 1991).

## VI.   ARGUMENT

### A. <u>SUMMARY OF ARGUMENT</u>

Petitioners initiated an involuntary bankruptcy against Navient Solutions LLC using the Official Form 205 with an attached supplemental statement.  The Federal Rules of Bankruptcy plainly state that Official Form 205 contains all the allegations necessary to commence an involuntary bankruptcy.  The Bankruptcy Court, however, ignored Petitioners' Form 205 and instead treated the supplemental statement like it were a complaint in a civil action.  The Putative Debtor then moved to dismiss, attaching more than 400 pages of exhibits and a host of counter-allegations and counter-facts.  Petitioners thereafter sought to convert the motion to summary judgment and introduce its own evidence, which the Court denied. Instead, the Court analyzed the Petitioners' supplement under Rule 12(b) without specificizing which subsection.  The Court erred in dismissing the petition under either (b)(6) or (b)(1).  If the Court was using (b)(1), that was erroneous because the Second Circuit held in 2010 that the statutory elements under 303 were non-

jurisdictional and went to the merits.  If the Court was using (b)(6), the dismissal was also erroneous because the Court drew on numerous facts from outside the pleadings and construed a multitude of issues against the Petitioners.  For all these reasons, this Court should reverse and remand.

## B.  THE MERITS

### 1   A Completed Form 205 Is Itself Sufficient to State a Claim

Bankruptcies are not civil actions that begin with a complaint drafted by lawyers.  Bankruptcies are begun using official forms created by the Judicial Conference.[3]  For that reason, the "mandate in Rule 9009(a) that a party use the Official Forms suggests that the use of Official Form 105 is legally sufficient to state a claim. Requiring additional information outside the Official Form would suggest the Official Form is somehow deficient." *In re Gutierrez*, 2020 WL 3720211, at *4 (Bankr. S.D. Miss. May 15, 2020).  In fact, the Federal Rules of Bankruptcy Procedure state that completion of the Official Form is sufficient to allege the elements of an involuntary bankruptcy. Fed. R. Bank. Pro. 1003, Notes of Advisory Committee on Rules — 1983 ("Official Form No.  . . . is prescribed for use by petitioning creditors to have a debtor's assets liquidated under chapter 7 of the Code or the business reorganized under chapter 11. It contains the required allegations as specified in §303(b) of the Code.").  Multiple federal courts have found this sufficient.  *See also In Re Haymond*, No. 21-32307 (Bankr. S.D. Tex. Sept. 28, 2021) ("Rule 9009(a) states that '[t]he Official Forms prescribed by the Judicial Conference of the United States shall be used without

---

[3] The REA gives the Supreme Court the power to create official forms to be used by litigants. 28 U.S.C. § 2075 ("The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.").  The Judicial Conference created Form 205 as the official form to be used in an involuntary proceeding.  *In re Brooks Fashion Stores, Inc.*, 124 B.R. 436, 440 (Bankr. S.D.N.Y. 1991) ("The Bankruptcy Rules were promulgated by the Supreme Court pursuant to authority granted by Congress in 28 U.S.C. § 2075. As such, the Rules have the force of law.").  *See also Lynch v. Jackson*, 853 F.3d 116, 119 (4th Cir. 2017) (affirming bankruptcy court that rejected Administrator's argument that the instructions on Form 22-A-2 could be erroneous and stating, "[t]he official forms are promulgated by the United States Judicial Conference pursuant to 28 U.S.C. § 2075.").

alteration.' That mandate suggests that the use of Official Form 105 is legally sufficient to state a claim."); *In re Rambo Imaging, L.L.P.*, 2007 WL 3376163, at *9 (Bankr. W.D. Tex. Nov. 8, 2007) ("[B]y expressly alleging on the Official Form that it is eligible to be a petitioning creditor under § 303(b)(1), the Petitioner has incorporated that section's language to an extent that it should be considered to have made the allegation that its claim is not contingent nor subject to a bona fide dispute."). [4]

Petitioning Creditors completed Form 205A in its entirety.  JA at 16-19.  Official Form 205 contains all of the allegations necessary under section 303 of Title 11.  Navient was put on plain notice and knew precisely what relief the Petitioning Creditors were seeking.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'").  The Bankruptcy Court, however, ignored Petitioners' Form 205, and construed the Petitioners' supplemental statement like a complaint in a civil action.

### 2  The Bankruptcy Court Erred in Dismissing the Petition under Rule 12(b)(6)

In order to prevail under 11 U.S.C. § 303 on a motion to dismiss, at least three petitioners whose claims aggregate $15,325 must allege that their claims are: (i) not contingent; (ii) not subject to a *bona fide* dispute as to liability; (iii) not subject to a *bona fide* dispute as to amount; and (iv) the putative debtor is generally not paying debts as they became due.

---

[4] Form 205 identifies these as "allegations" in the field "not generally paying debts." By labeling them as "allegations," the Judicial Conference unequivocally determined these were not legal conclusions or cursory.  In fact, if this were not the rule, it becomes hard to imagine how any corporation or individual could successfully file a *voluntary bankruptcy*.  Any creditor could always oppose a bankruptcy petition on the grounds that a debtor merely filled out a conclusory form but provided no evidence that it was, *inter alia*, domiciled in the United States, not a railroad, or that all of its debts were "noncontingent, liquidated, and unsecured."

Petitioners sufficiently alleged these elements on Form 205, and also in the supplement. Petitioning Creditors pled that their underlying private student loans were discharged, JA at 24 (alleging the Petitioning Creditors "had their private student loans discharged") but were thereafter misled by Navient into repaying $45,683.64 on these discharged debts.  JA at 24 (Petitioning Creditors "have been hounded and lied to for more than a decade to repay discharged debts."); JA at 13 ("Petitioning Creditors are owed $45,683.64 in money wrongfully collected from them after discharge.").  Petitioners made other specific allegations and provided additional documentation to demonstrate there was no *bona fide* dispute.  For example, in the supplement, the Petitioning Creditors displayed Navient's *own* investor disclosures that state Career Training loans are dischargeable in bankruptcy.  JA at 27, 82.  The Petitioning Creditors also cited guidance from one of Navient's federal regulators that loans like the Petitioning Creditors may be discharged in bankruptcy, JA at 27-28, and cited to an order from the Southern District of Texas prohibiting Navient from continuing to deny to debtors that their Career Training Loans were not discharged. *Navient Sols., LLC*, 2020 WL 5579607 (Bankr. S.D. Tex. Aug. 27, 2020) (forbidding Navient from continuing to represent to discharged debtors that their Career Training loans were non-dischargeable and forbidding Navient from accepting any money from any debtor who had previously been told their Career Training loans were non-dischargeable).[5]  As for allegations that Navient was generally not paying its debts as they became due, Petitioners alleged that there were hundreds of thousands of other similarly situated creditors who were owed more than a billion dollars—an allegation which Navient's counsel concurred with during the hearing.  JA at 674

---

[5] Navient will likely reject this interpretation of the court's order and retort that it only prohibits Navient from sending L180 letters.  The L180 Letter is the means by which Navient represents to debtors that their loans were not discharged in bankruptcy.  To construe the order to mean only that Navient cannot send L180 letters would put form over substance. Under the terms of the Agreed Order in *Crocker*, Navient is not allowed to tell bankrupts that their Career Training loans were not discharged.

("Mr. Husnick: There's no dispute at all, Your Honor, that there are more than 12 creditors here. Indeed, on page 9, the petitioners aver that there are hundreds of thousands of potential creditors."); JA at 711 ("Not only are they creditors, but they are creditors who claims against Navient by virtue of those appellate rulings are not subject to a bona fide dispute as to liability.").  Not of one of these creditors has received the money they are owed despite years of litigation demanding restitution.[6]

### a. *Petitioning Creditors sufficiently alleged the existence of three creditors with claims aggregating*

Petitioners alleged that they obtained private student loans from Navient, that these loans were discharged in bankruptcy, and Petitioners had been misled into repaying $45,654.  JA at 13, 24. The Bankruptcy Court made no findings that Petitioning Creditors did not have valid claims or that these claims did not aggregate to more than $15,325. Accordingly, the Court found that Petitioners had sufficiently pled that the three Petitioning Creditors had claims aggregating in excess of $15,325.

### b. *Petitioning Creditors sufficiently alleged that the claims were not contingent*

There exists a contingency when the liability on a claim turns on the outcome of a future event. The Bankruptcy Court made no findings that Petitioning Creditors' claims were contingent. Accordingly, the Court found that Petitioning Creditors had sufficiently pled that their claims were not contingent.

### c. *The Bankruptcy Court erred in concluding that the existence of possible alternate factual scenarios created bona fide disputes as to liability*

Pursuant to 303(b), the Petitioners' claims could not be subject to a *bona fide* dispute as to liability—another way of saying this is that the claims may indeed be subject to *some* of the

---

[6] As discussed more below in subsection *d,* Petitioners also alleged that Navient's overall financial condition was suspicious.

putative debtors' disputes.  "There is a bona fide dispute if there is either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts." *In Re Manolo Blahnik Usa, Ltd.*, 619 B.R. 81 (Bankr. S.D.N.Y. 2020).  JA at 739.  In dismissing the petition, the Bankruptcy Court concluded there were several *bona fide* disputes, including that Petitioners (i) might be required to first file an adversary proceeding before obtaining a determination of discharge; (ii) Petitioners' co-borrowers might actually have made the payments giving rise to the claims; (iii) Petitioners' claims might be subject to laches; (iv) Navient might have obtained the money without violating the discharge injunction; and (v) Petitioners might have committed fraud in obtaining the underlying loans. JA at 742.  Far from testing or even analyzing any of Navient's purported disputes, the Bankruptcy Court uncritically adopted every single one of them. JA at 743 (noting an unenumerated "multitude of issues that remain unresolved").

As a preliminary matter, positing two potential outcomes – one under which Petitioners would prevail and one under which they would lose – cannot be sufficient to establish a *bona fide* dispute at the pleading stage. Were it otherwise, that would turn 12(b)(6) on its head: treating the mere *possibility* that petitioners might lose at trial as fatal to their claims on the pleadings.  *See Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) ("Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'").  And it is important here to recall that the Second Circuit has held petitioning creditors need not be able to prevail on summary judgment at the pleading stage.  *In re BD Intern. Discount Corp.*, 701 F.2d 1071 (2d Cir. 1983) ("In order to qualify a claim as a basis for seeking involuntary bankruptcy, a claimant need not make out a case warranting summary judgment [.]").  And yet the Court repeatedly treated the existence of potential alternate outcomes as statutory *bona fide* disputes.  This was plain error.

For example, the Bankruptcy Court acknowledged that if the Petitioning Creditors' underlying loans fit squarely within the *Crocker* and *McDaniel* decisions, then there would be no dispute as to liability.  JA at 686 ("The Court: [A]s to liability, would you agree that liability not be in dispute as to any loans that foursquare were in the, essentially by the *Crocker* and *McDaniel* decisions?  I mean, you don't have to have a decision at every circuit in the country in order to have under (sound glitch) as to liability; *wouldn't* you agree with that?").  And, in fact, Navient's counsel did agree with that.  JA at 682 ("Mr. Husnick: I agree with you, Your Honor.").  Since the Court plainly envisioned at least one plausible situation where Petitioners' claims were not subject to any *bona fide* dispute, that should have been the end of the analysis; Petitioners prevail on 12(b)(6).  Yet despite the Court itself acknowledging one scenario where there would be no dispute as to liability (if the loans fit within *Crocker*) and one where there would be a dispute as to liability (if the loans did not so fit), the Court transformed this contention on the pleadings as a *bona fide* dispute that doomed the petition.[7]   In another place, the Court concluded that there was a *bona fide* dispute because the Petitioning Creditors might – *or might not* – be required to file an adversary proceeding prior to obtaining a discharge.   JA at 742 ("[W]hether a debtor is automatically entitled to a discharge of the debts in question or whether it must initiate an adversary proceeding.").[8]  This may indeed have formed the basis for a disagreement between the parties about undisputed facts as applied to law—but on 12(b)(6), the Court must construe that disagreement in the non-moving party's favor (provided the outcome favoring Petitioners was at

---

[7] As the Court acknowledged, both Bannister and Hood had Career Training loans, which are encompassed by *Crocke*r, *McDaniel* and *Homaidan* decisions. LaBarron Tate, on the other hand, filed for bankruptcy prior to Oct 17, 2005, at a time when all private student loans were freely dischargeable. And it is black letter law that the filing date is what matters not the date on which the discharge was entered.

[8] What is also odd is that the court seemed to disagree with Navient at the hearing. JA at 682 ("THE COURT: Would you agree that if 523(a)(8) is inapplicable that a debtor in a proceeding, in a bankruptcy proceeding did not have to commence an adversary proceeding in order to determine that loans that were not educational benefit loans were discharged.").

least plausible).  Moreover, this is not the sort of "meritorious contention" required under the statute. *In Re Manolo Blahnik Usa, Ltd.*, 619 B.R. 81 (Bankr. S.D.N.Y. 2020) ("There is a bona fide dispute if there is . . . a meritorious contention as to the application of law to undisputed facts.").[9]  Indeed, this scenario would require *hundreds of thousands* of persons to file adversary proceedings in order to obtain a (negative) determination that their loans were *not* included in a statutory exception. *Cf. Homaidan v. Sallie Mae, Inc. et. al.* 3 F.4th 595, 600 (2nd Cir. 2021) (stating Navient bears the burden to prove the student debt is encompassed by a statutory exception). Understand that as a practical matter, this would result in a ***tenfold increase*** in the number of adversary proceedings filed each year.[10]  Thus, in order for this theory to be possible in practice, Congress would have to create hundreds of new federal judgeships solely to process these complaints. That is not the basis for a *bona fide* dispute — it is a preposterous legal position.  And make no mistake, if by some miracle Congress could create and fill these judgeships and these hundreds of thousands of debts filed federal actions, Navient would conjure up a new argument about why these debts were not discharged and parade it across the federal courts as an "issue that is still being worked out in the courts."  This is precisely the sort of evasion and delay tactic that led Petitioners to file the involuntary.

Elsewhere, Navient introduced the names of Petitioners' co-borrowers and suggested *perhaps* the co-borrowers made the payments and not the Petitioners. JA at 680 ("whether the debtor has

---

[9] In fact this legal position was rejected by the very same court Navient relied on in attempting to demonstrate a bona fide dispute.  *Bannister, v. Navient Solutions,* 2021 WL 219525, at *4 (Bankr. S.D.N.Y. Jan. 20, 2021) ("The failure to seek a dischargeability determination does not alter the fact that the debt is or is not discharged upon entry of the discharge order. It merely avoids a judicial declaration of that fact at that time.").

[10] Navient acknowledged there were hundreds of thousands of potential creditors similarly situated to the Petitions. JA at 674 ("Mr. Husnick: There's no dispute at all, Your Honor, that there are more than 12 creditors here. Indeed, on page 9, the petitioners aver that there are hundreds of thousands of potential creditors.").  There were only 24,429 adversary proceedings filed in 2020. *See* Federal Judicial Caseload Statistics, Adversary Proceedings in 2020: 24,429, *available at*:  https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2019

established that making payments post-discharge and not the co-borrower, again, another fact inquiry."). *Cf. Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000). ("[A] district court errs when it . . .relies on factual allegations contained in legal briefs or memoranda."). Once again, the Court concluded that since this *might be* true, the Petitioners' claims were doomed. JA at 742 ("whether the debtor rather than the co-borrower made any payments post-discharge."). This was clearly improper for a multitude of reasons including: (i) these co-borrowers appeared nowhere within the four corners of the pleading; (ii) the Court accepted this possibility without even asking Navient if they had bothered to check and see if the co-borrowers had in fact made the payments notwithstanding that this information was clearly within their possession; and (iii) suggesting someone else made the payments was merely a roundabout way of denying the facts as pled— which is not permissible on 12(b)(6) where all facts as pled must be accepted as true. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ("We accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party.").

In another place, Navient suggested that perhaps the Petitioners had committed fraud when they borrowed their underlying private student loans and thus the loans might have been non-dischargeable for this alternate reason. JA at 742 ("Navient asserts that many unresolved issues remain [including] whether the loans were obtained under false pretenses."). Apart from the fact that disproving this would require the Petitioners to prove a negative, as a practical matter, it is unclear how one would successfully plead that they had not committed fraud without resort to mere labels and legal conclusions. Lastly, Navient made an entirely conclusory allegation that perhaps the Petitioners' claims were subject to laches. Not only is a laches defense generally inappropriate on 12(b)(6), *Lennon v. Seaman*, 63 F. Supp. 2d 428 (S.D.N.Y. 1999) ("The defense

of laches is an affirmative defense, which is generally not appropriately raised in a motion to dismiss."), but more to the point Navient provided no counter-allegations even explaining the basis of its position.  It once again merely threw out a cookie cutter defense which the Court uncritically converted it into a *bona fide* dispute. *In Re Carolina Constructors & Investments*, C/A No. 20-02040-HB (Bankr. D.S.C. June 26, 2020) ("Mere contentions, by themselves, are not enough to show the existence of a bona fide dispute; rather, the debtor must produce sufficient evidence demonstrating the existence of a *bona fide* dispute in order to satisfy its burden.").

### d.  The Bankruptcy Court erred in concluding the claims were subject to a *bona fide* dispute as to amount

The Bankruptcy Court stated that the Petitioners had only made "vague assertions" about the amount of their claims, JA at 734, and that Navient had successfully demonstrated those amounts were subject to a *bona fide* dispute.  This was plain error for at least two reasons.  *First,* the Court did not explain why— or even how—specific numbers could be vague.  Petitioning Creditors alleged that Sarah Bannister was owed $6,097.37 and that Brandon Hood was owed $28,919.37; and that LaBarron Tate was owed $10,666.90.  JA at 18.  Those are not vague numbers.  And they were taken directly from Navient's data. Petitioners alleged these amounts were owed because Navient had misled them into repaying discharged debts.  Curiously, Navient did not propose an alternate set of numbers but merely concluded that the amounts as alleged by Petitioner might be the wrong amount.[11]  *Second*, the Bankruptcy Court erred in dismissing the Petition because the claims were neither liquidated nor reduced to judgement.  Claims under §303 explicitly need not be liquidated under the plain language of the statute.  In fact, under the plain language of 11 U.S.C. § 101(5), a petitioners' claim can be unliquidated, not fixed, not reduced to

---

[11] Navient also erroneously stated the Petitioners failed to state these numbers under penalty of perjury.  JA at 131. That is not true.  Here again Navient failed to acknowledge the existence of Petitioners' Form 205 and that it was signed under penalty of perjury by each of the three Petitioners.

judgment, and unmatured. *Cf.* JA at 741 ("At the Hearing, counsel for Navient represented that no money judgment has been rendered against Navient in either case."). Moreover, whether a money judgment has been rendered against Navient is entirely irrelevant under the statute which does not require claims be reduced to judgment nor does it even require the claims be liquidated. JA at 753 ("Navient has no outstanding debts of the type that the Petitioning Creditors attempt to assert, at least none that are liquidated and that are not the subject of a bona fide dispute."). It is unclear where else the Court's belief that the claims needed to be liquidated influenced its ultimate ruling but the Second Circuit has stated that "[v]acatur is required even where the court's ruling . . . contains an 'unexplained reference' that 'raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion.'" *Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000).

### e. The bankruptcy court erred in concluding the Petitioning Creditors failed to allege that Navient was not generally paying its debts as they became due.

"[W]hether Vortex was generally paying its debts as they came due is a question of fact**."** *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057 (9th Cir. 2001). **"**Courts have stated that the determination whether a debtor is generally paying its debts calls for the consideration of four factors: (1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct of its financial affairs." *In re A & J Quality Diamonds, Inc.*, 377 B.R. 460 (Bankr. S.D.N.Y. 2007).

Petitioning Creditors explicitly did allege Navient Solutions LLC was not generally paying its debts as they became due on Form 205. JA at 17 (petitioners checked the box marked "Allegations" that states "the debtor is generally not paying its debts as they become due."). Furthermore, in its supplement, Petitioning Creditors addressed each of the four factors above.

*First*, Petitioning Creditors explicitly stated there were hundreds of thousands of other similar situated creditors (JA at 13) —a fact which Navient admitted was true during the hearing. JA at 675 ("There's no dispute at all . . .the petitioners aver that there are hundreds of thousands of potential creditors.").  *Second*, Petitioning Creditors also alleged these creditors were owed more than a billion dollars.  JA at 28 ("[M]ore than a billion from hundreds of thousands of other debtors Navient has defrauded over the last two decades.").  *Third*, Petitioning Creditors alleged this was material because it believed Navient was not litigating in good faith in other forums and intended— like its counterpart TERI—to ultimately declare its own Chapter 11 and avoid having to repay the enumerated creditors.  *Fourth*, Petitioning Creditors alleged that Navient was balance sheet insolent JA at 25 ("The arithmetic that follows from the official position of this government leads inexorably to the conclusion that Navient is insolvent."), its business model was predicated on originating subprime credit JA at 22 ("[I]n every year from 2000 to 2007, between 68% and 87% of loans defaulted.") and had three CFOs since June of 2020, a highly irregular and troubling scenario for a publicly traded corporation.  *id* at note 6.[12]

Furthermore, the plain language of the statute forbids any determination on this element before trial.  11 U.S.C. § 303(h) ("Otherwise, ***after trial,*** the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if— (1) the debtor is generally not paying such debtor's debts as such debts become due [.]") (emphasis added).  And the Second Circuit concurs.  *In re BD Intern. Discount Corp.*, 701 F.2d 1071 (2d Cir. 1983) (concurring with trial court that question of "whether a debtor was not generally paying its debts" should not be resolved on motion to dismiss and was "more properly" reserved for trial per section 303(h)).  But not only did the Court refuse to entertain this issue until trial—it

---

[12] Creditors' counsel in fact consulted several financial services professionals who all concurred that was a very strong indication that no reputable CFO would continue singing Navient's financial disclosures.

simultaneously demanded evidence from the Petitioning Creditors on motion to dismiss. JA at 753 ("Navient correctly asserts that Petitioning Creditors *do not provide evidence* to support a finding that Navient is generally not paying its debts as they become due.").  At the risk of beating a dead horse: Petitioning Creditors were not required to present evidence with their petition. *Glucksman v. First Franklin Finan. Corp*. 601 F. Supp. 2d 511, 514 (E.D.N.Y. 2009) ("[T]he sufficiency of . . .evidence is not relevant on a motion to dismiss."). *See also In re BD Intern. Discount Corp.*, 701 F.2d 1071 (2d Cir. 1983) ("In order to qualify a claim as a basis for seeking involuntary bankruptcy, a claimant need not make out a case warranting summary judgment [.]").[13]

### 3   The Bankruptcy Court Erred in Refusing to Convert the Motion to Summary Judgment or Else Proceed to Trial

After receipt of Navient's motion to dismiss, Petitioners moved to convert to summary judgment. *First*, it was clear that Navient was trying to introduce extraneous facts and Petitioners wished to controvert them and offer its own extraneous documents.  *Second*, the statutory elements of § 303 plainly did not lend themselves to an adjudication on 12(b)(6); terms like *bona fide* dispute and *generally* not paying are clearly fact intensive questions. Moreover, and as discussed above, there is a tension between the legal standard under 12(b)(6) and the elements under § 303; the putative debtor must demonstrate the existence of "a genuine issue of material fact that bears upon the debtor's liability" but the Court must accept all pled facts as true and thus cannot find a genuine issue of material fact at the pleading stage.  *Third*, despite denying the motion, the Court

---

[13] There remains the additional issue that Navient never actually said that Navient Solutions LLC was paying its debts as they became due—instead it only said that the parent corporation was paying its debts as they became due. While this was specifically discussed at the hearing, the Court ignored this irregularity in its opinion. *See* JA at 716 ("nowhere in the motion to dismiss papers does the alleged debtor say that the alleged debtor itself, the privately held entity, Navient Solutions, LLC, that it itself, okay, generally pay their debts as they come do. Instead, what they do is they define the alleged debtor by reference to it non-debtor parent and an array of other non-debtor entities, then calls them the company and then proceeds to say that the company, according to them, can pay their debts when they become due.").

incorporated Navient's counter-allegations and facts into its decision while at same time faulting Petitioners for failing to provide evidence to rebut Navient's counter-allegations.

*First,* Navient's motion to dismiss introduced facts and factual scenarios from outside the pleadings.  Specifically, Navient introduced evidence of *other debts* of the Petitioning Creditors—debts which had nothing to do with this proceeding.  JA at 125 ("Bannister holds five Tuition Answer Loans serviced by Navient."); JA at 125 ("Bannister also held two Career Training Loans for her daughter's attendance at a non-Title IV institution.").  In another place, Navient suggested perhaps the overpayments constituting the claims were not made by the Petitioners but were made by other people (*i.e.,* the co-borrowers) and perhaps the claim amounts as pled by Petitioners were incorrect.  If the Court wanted to consider these counter-allegations, it was required to convert to summary judgment. *Amaker v. Weiner*, 179 F. 3d 48 (2nd Cir. 1999) ("This Court does strictly enforce the conversion requirement of Rule 12(b) where there is a legitimate possibility that the district court relied on inappropriate material in granting the motion.").  And despite the fact that it would make the burden harder, Petitioners sought to convert to summary judgment in order to introduce other documentation, including: expert valuations of Navient's portfolio of debt, a liquidation analysis commissioned by Petitioners' Counsel, internal Navient policies bearing on the question of dischargeability and statements, facts and figures provided to Petitioners during settlement negotiations in other stalled litigation.[14]  *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 125, 131 (D. Conn. 2010) (discussing cases where courts have allowed settlement discussion in one case to be used in a related involuntary bankruptcy).

---

[14] JA at 579 ("Navient will stipulate that Creditors can use any of the Navient financials provided to Smith under the protective orders or else mediation privilege in either *Crocker v. Navient Solutions LLC* et. al., 16-ap-3175-drj (Bankr. S.D.T.X 2021) or *Homaidan v. Navient Solutions LLC* et. al, 17-ap-1085-ess (Bankr. E.D.N.Y. 2021) and which Smith had audited and analyzed from October 2020 to the end of December 2020.")

*Second*, owing to above, the Court was required to either convert to summary judgment, or else exclude all of Navient's counter-allegations and facts. "When matters outside the pleadings are presented in response to a 12(b)(6) motion, 'a district court must either exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). "[T]he limitations in Official Form 205 commonly result in a motion to dismiss an involuntary petition under Civil Rule 12(b)(6) being converted to a summary judgment motion governed by Civil Rule 56." *In Re Carolina Constructors & Investments*, No. 20-02040-HB (Bankr. D.S.C. June 26, 2020).  The "conversion requirement is strictly enforced whenever there is a 'legitimate possibility' that the district court relied on material outside the complaint in ruling on the motion." *Amaker v. Weiner,* 179 F.3d 48, 50 (2d Cir.1999). A lower court therefore errs when it "consider[s] affidavits and exhibits submitted by defendants." *Kopec v. Coughlin* 922 F.2d 152, 155 (2d Cir. 1991). *See also Federated Mut. Ins. Co. v. Coyle Mechanical Supply*, 983 F.3d 307 (7th Cir. 2020) (faulting district court for "cherry-picking among materials outside the pleadings to find evidence that undercut Coyle's arguments and ignoring other relevant evidence.").  Furthermore, it seemed plain to Petitioners that whether there was a *bona fide* dispute or whether Navient was *generally* not paying its debts were fact intensive inquires that could not resolved on the pleadings. *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057 (9th Cir. 2001) (concurring with other circuits that whether there is a bona fide dispute under section 303 "is essentially a factual inquiry.").  That is, whatever counter-allegations and counter-facts Navient presented as the basis for the *bona fide* dispute would necessarily have to be rejected in favor of whatever facts were pled by Petitioners on 12(b)(6).  This is true even if the Petitioners chances of

success at trial were remote and unlikely. *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) ("Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'").

*Third,* despite denying the motion to convert to summary judgment, the Bankruptcy Court demanded Petitioners present evidence. See JA at 743 ("The complete failure by the Petitioning Creditors . . . *to provide evidence* showing that the claims are not subject to bona fide dispute."); and ("As Navient submits, Petitioning Creditors' fail to '*present evidence* to show they hold valid, undisputed claims[.]"); JA at 740 ("Petitioning Creditors . . . have provided no evidence of their claims.").   Contrary to the Court's holding, a plaintiff or petitioner is obviously not required to present evidence on 12(b)(6).   In fact, "a plaintiff is not required *to plead* '*specific evidence* or extra facts beyond what is needed to make the claim plausible.'" *Mosca v. City of New York*, 2018 WL 2277837, at *3 (E.D.N.Y. May 18, 2018) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-1 (2d Cir. 2010)) (emphasis added).   And as the Second Circuit held, petitioning creditors need not be able to prevail on summary judgment at the pleading stage. *In re BD Intern. Discount Corp.*, 701 F.2d 1071 (2d Cir. 1983) ("In order to qualify a claim as a basis for seeking involuntary bankruptcy, a claimant need not make out a case warranting summary judgment [.]").   At the same time the Court demanded evidence from the Petitioners, it construed every possible inference in favor of the moving party.   For example, the Court spent considerable time analyzing Sarah Bannister's Tuition Answer Loans and the prior litigation involving the Tuition Answer Loans despite the fact they had nothing to do with the proceeding.   Indeed, as the Court noted, Bannister also had two Career Training Loans—debts which fit squarely within the *Crocker*, *McDaniel,* and now *Homaidan* decisions.   It was these loans that formed the basis of Bannister's claim—not the Tuition Answer Loans.   And yet here again the Court converted the possibility the Petitioners'

claims were invalid into a *bona fide* dispute. JA at 743 ("Therefore, only to the extent that Bannister's claim for a refund of overpayment relates to the loans at issue in the Stipulation, the claim is not only subject to *bona fide* dispute as to liability and amount, but it appears that Bannister is precluded entirely from asserting a claim premised on the dischargeability of those loans."). *cf. Federated Mut. Ins. Co. v. Coyle Mechanical Supply*, 983 F.3d 307 (7th Cir. 2020) (faulting district court for "cherry-picking among materials outside the pleadings to find evidence that undercut Coyle's arguments and ignoring other relevant evidence.").

### 4   The Court Erred in Analyzing the Motion Under 12(b)(1)

As shown above, the Bankruptcy Court refused to convert to summary judgment while simultaneously considering facts from outside the pleadings.  The only possible explanation for this would be if the Court believed it was analyzing the pleading under 12(b)(1).  *See Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi,* 215 F.3d 247, 249 (2d Cir.2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.").  This would also make sense given that the Bankruptcy Court drew its legal standard from a Second Circuit case *BDC*.[15] In *BDC*, the Second Circuit held that the requirements under section § 303 were jurisdictional. *In re BDC 56 LLC*, 330 F.3d 111, 118 (2d Cir. 2003) ("We believe the more sound view is that the [§ 303] requirement is subject matter jurisdictional, and now so hold.").  Thus, under *BDC*, lower courts were required to resolve the statutory elements of § 303 under 12(b)(1) and could consider external documents and facts.  The problem with the Bankruptcy Court's analysis, however, is that

---

[15] The Bankruptcy Court technically quoted a citation from *In re Troy* that was itself drawn from *BDC*. Notably, in *Troy,* the Second Circuit was only reviewing the *bona* fide dispute for the purposes of determining whether to affirm the award of attorneys' fees.

the *BDC* legal standard was explicitly overturned by *Zarnel*, where the Second Circuit concluded that intervening Supreme Court precedent required the Second Circuit to recast the statutory requirements under § 303(b) as going to the merits.  "We find that, in light of *Arbaugh, In re BDC 56 LLC* can no longer be considered good law on this point."  *In re Zarnel*, 619 F.3d 156, 169 (2d Cir. 2010).  The Bankruptcy Court's citation to overturned caselaw from the Second Circuit, its reference to matters outside the four corners of the pleadings, and its refusal to convert to summary judgment indicates that it was analyzing the motion under 12(b)(1).  And if it was, that was plain error because involuntary petitions can only be analyzed under subsection (b)(6) of Rule 12.

### 5   Petitioning Creditors' Lack of Opposition Cannot Constitute Alternate Grounds to Dismiss on The Pleadings

"Where a motion to dismiss is unopposed, a court should nevertheless 'assume the truth of a pleading's factual allegations and test only its legal sufficiency.'" *McCall v. Pataki,* 232 F.3d 321, 322 (2d Cir. 2000).  "We have held with respect to a motion pursuant to Fed. R. Civ. P. 12(c) to dismiss an action on the basis of the pleadings, that [w]here ... the pleadings are themselves sufficient to withstand dismissal, a failure to respond to a 12(c) motion cannot constitute `default' justifying dismissal of the complaint." *Maggette v. Dalsheim,*709 F.2d 800, 802 (2d Cir.1983). "The same principle is applicable to a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss an action on the basis of the complaint alone. Such motions assume the truth of a pleading's factual allegations and test only its legal sufficiency." *De Jesus v. Sears, Roebuck & Co., Inc.* 7 F.3d 65, 69 (2d Cir.1996).  "The sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F. 3d 321, 322-323 (2nd Cir. 2000). *See also See Pomerleau v. W. Springfield Pub. Sch*., 362 F.3d 143, 145 (1st Cir.2004)

("When deciding a 12(b)(6) motion, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim. This obligation means that a court may not automatically treat a failure to respond to a 12(b)(6) motion as a procedural default."). And the majority of circuits concur. *See also Webb v. Morella*, 457 F. App'x 448, 452 (5th Cir. 2012) (same); *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 (4th Cir. 2014) (same).[16]

## C. <u>BAD FAITH</u>

"[T]here is a presumption of good faith in favor of the petitioning creditor, and thus the alleged debtor has the burden of proving bad faith." *In re Bayshore Wire Products Corp.*, 209 F.3d 100 (2d Cir. 2000). "The Code contains no definition of bad faith. However, whether bad faith exists is a question of fact." *In re Vincent J. Fasano, Inc.*, 55 B.R. 409 (Bankr. N.D.N.Y. 1985). *See also Bank of Comms. v. Ocean Development American, Inc.*, 904 F. Supp. 2d 356 (S.D.N.Y. 2012) ("All told, the question of whether a person has acted in good faith is a question of fact dependent on the circumstances of each particular case."). The Bankruptcy Court concluded that Petitioning Creditors' Counsel acted in bad faith because he (i) failed to conduct a reasonable inquiry into the merits of the petition; (ii) intended to harm Navient's reputation; and (iii) intended to achieve better settlement terms for his clients in ongoing litigation elsewhere. Each of these findings were plain error.

*First,* whether counsel initiated the Involuntary Petition in bad faith was a question of fact that could not be resolved on the pleadings because, *inter alia*, it required an inquiry into counsel's motive, a state of mind which the Second Circuit has held in other contexts is a question of fact.

---

[16] Counsel for Petitioning Creditors was in the hospital on the day of the hearing, which was only 8 days after the Putative Debtor filed its response. Counsel represented this to the Bankruptcy Court, and offered to disclose medical records in-camera. The Bankruptcy Court ignored Counsel's offer. Accordingly, lack of response to the motion to dismiss was not a reason to dismiss the Involuntary Petition under Second Circuit law.

*Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994) ("[T]he motive behind Sheppard's firing in his retaliation claim is clearly a question of fact.  Because this question is in dispute, it was improper for the district court to answer it on a motion for dismissal on the pleadings.").  Furthermore, Petitioners' Counsel did conduct an extensive inquiry prior to filing the petition.  Counsel spent more than $50,000 of his own money on audits and valuations of Navient's portfolios obtained under seal during the course of other litigation, *see* Affidavit of Austin Smith JA at 579.  Counsel also had a comprehensive liquidation analysis conducted, and consulting with dozens of bankruptcy experts and lawyers about the relative merits and risks of the Involuntary Petition.  Counsel moved the Court for permission to introduce these documents and evidence, which the Court denied.  And yet after denying this request, the Court then concluded that the Petitioners' lack of evidence demonstrated bad faith.  JA at 743 ("As Navient submits, Petitioning Creditors' failure to 'present evidence to show they hold valid, undisputed claims . . . reflects a complete failure to make a reasonable inquiry into the validity of the claims . . .[and] evidences a lack of good faith [.]")

*Second*, as with the merits, the Bankruptcy Court improperly drew a number of facts from outside the pleading including: (i) videos from Counsel's website; (ii) Counsel's quotes to the media (iii) statements on Counsel's website; and (iv) Counsel's social media presence in general:

- "Smith makes regular use of social media, as well as more traditional news media, in this case and in his other cases involving student debt."; [17]

- Nevertheless, the website, taken as a whole, along with Smith's broader social media presence raises legitimate concerns that the filing of the petition was

---

[17] Respectfully, this Court did not conclude Smith makes any *improper* use of the media—such as lying to or misleading journalists about his work. That Smith seeks to broaden public knowledge about an issue he feels is being overlooked is true and if this Court will excuse any perceived grandiosity, seemingly protected by the First Amendment. *See Webb v. Paine*, 2021 WL 261276, at *5 (S.D.W. Va. Jan. 26, 2021) (stating that counsel's social media activity is protected by the First Amendment).

motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor.[18]

- And Navient is correct that Smith has "paraded the story [of this case] across the media." (Motion ¶ 38.) In fact, this case now has its own page on Smith's website.

- Navient argues the FAQ section (the "FAQ") on Smith's website is "designed to inflame other student loan borrowers by feeding them false information" since it does not state that most student loans are nondischargeable."

*Third*, although Counsel was engaged in ongoing litigation with Navient, one of those Courts explicitly stated that the parties all retained their right to seek relief in other forums owing to Navient's continued adjournments.[19]  During that time, Smith determined that Navient was not genuinely trying to resolve any of the discharged debt litigation in good faith, but was merely dragging the process out as long as possible until the onslaught of government and private litigation consumed the corporation, at which time it would seek relief under Title 11.

## D. **ABSTENTION**

"Relief granted under §305(a) is considered an 'extraordinary remedy.'"  *In re Mylotte, David & Fitzpatrick*, 2007 WL 3027352, at *5 (Bankr. E.D. Pa. Oct. 11, 2007).  Everything beyond the Court's abstention ruling was most likely *ultra vires*.  That is, once the Court abstains, it cannot also wade into the merits. But that is precisely what this Court did—it determined this was the wrong forum under statutory abstention, and then proceeded to analyze the merits, and proclaim the meaning of federal law as applied to facts on a motion to dismiss.  This was improper.  Instead, if the Court was determined to abstain, it was required to follow the below three-step analysis.

---

[18] While the Court here only stated this raised a "legitimate concern," the Court later concluded this was established as a matter of law.

[19] *Crocker et al. v. Navient Solutions LLC*, 16-03175, Hearing Transcript (Bankr. S.D.T.X. Aug 27, 2020) ("The Court: And this, of course, does not stop you from asking for similar or different relief in any other court other than this one.")

First, before a federal court can abstain, "[t]he Court must consider whether it has jurisdiction before it can consider whether to abstain." *In re Wigley*, 624 B.R. 861, 867 (Bankr. D. Minn. 2021); *Disability Rts. New York v. New York*, 916 F.3d 129, 131 (2d Cir. 2019) (stating that because the court abstained, it did not reach the merits).  *Hamilton v. Bromley*, 862 F.3d 329, 334 (3d Cir. 2017) ("'Article III jurisdiction is always an antecedent question.' Thus a court cannot abstain . . . unless it concludes that it has Article III jurisdiction to abstain from.").  Once this Court determined it had jurisdiction, it should have known that "[s]ince federal jurisdiction over the bankruptcy case is exclusive, such abstention is a complete rejection of bankruptcy relief." *In re Bellucci*, 119 B.R. 763, 771 (Bankr. E.D. Cal. 1990) (citing S. REP. 95-989, 35, 1978 U.S.C.C.A.N. 5787, 5821). *"*Such abstention decisions are normally made at the outset of a case, before the abstaining court has acted to affect any of the parties' substantive rights and are, appropriately, unreviewable because they would prove an unwarranted burden on scarce appellate resources and because the merits will be adjudicated elsewhere, from which an appeal will presumably then follow." *In re Axona Int'l Credit & Commerce Ltd*., 924 F.2d 31, 35 (2d Cir. 1991).  Having chosen to abstain, the Court was without any power to declare the meaning of law.  "For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998*)*.  Indeed, if abstention is appropriate, "a district court cannot refuse to abstain, retain jurisdiction over the action, and render a decision on the merits [.]" *Beltran v. State of Cal.*, 871 F.2d 777, 782 (9th Cir. 1988).  And yet this precisely what this Court did.  *In re Navient Sols., LLC*, 2021 WL 857114, at *15 (Bankr. S.D.N.Y. Mar. 8, 2021) ("Based on the Court's analysis of the *Monitor Single* Factors, the Court **FINDS** that abstention from this case is

warranted.").[20]  If the Court wished to abstain, it was clearly free to do so.  But it was not then also free to make findings of fact and conclusions of law with regard the merits and Counsel's bad faith.

### E.  ATTORNEYS' FEES

The Bankruptcy Court erred in imposing attorneys' fees for at least three reasons.  *First*, even if this Court disagrees with *Rambo*, *Gutierrez*, and *Haymond* regarding the sufficiency of Form 205, it would be highly irregular to establish a system whereby in one federal court a petition could withstand 12(b)(6) whereas in another federal court that same petition would be dismissed for bad faith and penalized with significant attorneys' fees.  Indeed, this is especially true in the bankruptcy context because Title 11 must be construed uniformly under the Constitution.  *Second*, the plain language of the statute authorizes the court to hold *petitioners* liable for attorneys' fees—it does not say counsel.  11 U.S.C. 303(i) ("The court may grant judgment (1) against the petitioners and in favor of the debtor for (A) costs; or (B) a reasonable attorney's fee [.]".  Where the language of the statute is plain, the inquiry is at an end. *Third*, pursuant to Fed. R. Civ. Pro 54(d), the party claiming an award of attorneys' fees must file such an application with the court within 14 days of the entry of judgment.  Fed. R. Civ. P. 54(d)(2)(A) ("Unless a statute or court order provides otherwise, the motion must: (i) be filed no later than 14 days after the entry of judgment [.]").  The Second Circuit strictly enforces this statutorily-imposed, 14-day time-period during which a legal fee motion must be filed – failing which the legal fee movant is deemed to be legally barred from

---

[20] *In re Bellucci*, 119 B.R. 763, 771 (Bankr. E.D. Cal. 1990) ("The procedural conundrum is the prohibition of review of the abstention decision by appeal or otherwise. 11 U.S.C. § 305(c). If supervision by Article III judges is essential for the constitutionality of the bankruptcy court, then an Article III judge must be able to pass upon an abstention decision. Either of two procedural alternatives would accomplish this result. First, the section might be interpreted, consistent with its plain language, to leave the initial decision to the bankruptcy judge but, construing the statute so as to be constitutional, permit review by the district court. Or, it might be interpreted to require that the district court actually make the initial determination, perhaps borrowing the report and recommendation procedure from Bankruptcy Rules 5011 and 9033.")

seeking to recover any claimed legal fees. *See, e.g., Tancredi v. Metropolitan Life Ins. Co.,* 378 F.3d 220, 227 (2d Cir. 2004) ("'Congress' reason for its 1993 addition to Rule 54(d)(2)(B) (the fourteen-day deadline) were three-fold: (1) to provide notice of the fee motion to the non-movant before the time to appeal expires; (2) to encourage a prompt ruling on fees to facilitate a consolidated appeal on both the merits and the attorneys' fee issue; and (3) to resolve fee disputes efficiently while the services performed are freshly in mind.").  Accordingly, this Court should reverse the award of attorneys' fees.

## VII.  CONCLUSION

For the foregoing reasons, the Petitioning Creditors request this Court reverse and remand for further proceedings.  In the alternative, Petitioners' Counsel requests this Court strike the finding of bad faith and award of attorneys' fees.

January 4, 2022

Respectfully submitted,

By:    */s/ Austin Smith*                        

**SMITH LAW GROUP LLP**
Austin C. Smith
99 Wall Street, No. 426
New York, New York 10005
(917) 992-2121
austin@acsmithlawgroup.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. Bankr. Pro 8015(h), I affirm that the word count excluding the cover page, table of contents and table of authorities is 10,383

*/s Austin C. Smith*

## CERTIFICATE OF SERVICE

I certify that the above filed brief was served upon all counsel registered to receive ECF notice on January 4, 2022.

*/s Austin C. Smith*